Fay F. VANDERPOOL, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. No. 64-51.

United States District Court
D. Oregon.

April 23, 1965.

George W. Rode, Medford, Or., for plaintiff.

Sidney I. Lezak, U. S. Atty., Chas. H. Habernigg, Asst. U. S. Atty., Portland, Or., for defendant.

EAST, District Judge.

This is a proceeding brought to review administrative denial of plaintiff's application for establishment of a period of disability and for disability benefits under sections 216(i) and 223(a) of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(a). The hearing examiner denied plaintiff's claim after a hearing. The Bureau of Hearings and Appeals, Social Security Administration, refused to review, making the examiner's disposition the "final decision" of the Secretary of Health, Education and Welfare and subject to this proceeding under section 205(g) of the Act, 42 U.S.C. § 405(g), which provides in part:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, * * * may obtain a review of such decision by a civil action * * * brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business, * * *."

The record reveals plaintiff is 53 years old and has a fourth grade education. He served as an infantryman during World War II. Before 1959 plaintiff held a wide variety of jobs and pursuits, for example: he cut wood, worked in orchards, dug post holes, worked in mines, and cleared brush for a railroad. In 1959 he suffered an acute myocardial infarction and has not been gainfully employed since then. At the request of his local welfare agency he filed an application with the State Employment Service six months after his attack. He failed to take any further steps regarding employment, however, contending he was physically unable to work. His activities since 1959 have been largely home-and family-centered. He still drives his own car for short distances. He cares for chickens and has cut and carried firewood, although plaintiff contends these latter activities caused acute anginal discomfort. He has gone fishing and on vacations with his family. To relieve his condition plaintiff has taken an anticoagulant and nitroglycerin in uncertain and disputed amounts. The Veterans Administration has awarded him a pension for complete non service-connected disability.

An extensive medical record has been compiled since the 1959 infarction. The earliest examinations resulted in fairly optimistic evaluations and prognoses. In late 1959 plaintiff's personal physician, Dr. Brandenburg, advised plaintiff he could "never do heavy labor again safely, but that he should be able to lead a normal life within the limits of extreme dyspnea and chest pain." By February,

1960, however, that same doctor diagnosed "coronary sclerosis" and "now disabling anginal chest pains." Dr. Brandenburg placed plaintiff's heart in Functional Class III, Therapeutic Class C.[1] In March, 1960, another physician, Dr. Casterline, indicated plaintiff "certainly should be able to begin to partake in increasing physical activity if given reassurances that there is no physical reason for him to be unable to do such activity. By February, 1962, however, Dr. Casterline made a very different evaluation. He diagnosed hardening of the coronary arteries and noted the "persistence of his electrocardiographic change certainly lends some suspicion to the fact that he may have some disability." He concluded he was "somewhat inclined to place him in the category of those individuals who are disabled for any significant physical activity." In March, 1962, Dr. Brandenburg again classified plaintiff's heart as III–C. He noted that "[N]o one has been able to get a positive Master's test,[2] but no one should need to. He is disabled by chest pain and we know he has coronary sclerosis." In March, 1962, a Veterans' Administration physician pronounced plaintiff's claims a "little exaggerated." The physician noted plaintiff appeared trim and sprightly and that his electrocardiogram revealed no notable deterioration since a 1959 examination. In May, 1962, an Oregon Heart Association examination made for the Oregon Department of Vocational Rehabilitation brought normal results from a Master's test. The plaintiff did complain of anginal pains, however, and his resting electrocardiogram "did show evidence of old posterior myocardial infarction so that he probably does have arteriosclerotic heart disease." The Association could "only estimate him to be FC II–III C"[3] and described his work capacity as "working with occasional rest periods at something such as light housekeeping." In June, 1962, Dr. Brandenburg reported plaintiff "able to care for basic needs but not employable."

In June, 1963, the hearing examiner supplemented the hearing and medical record by two unusual procedures. First, he sent Social Security field representatives to secretly observe plaintiff's activities around his house. The representatives reported seeing plaintiff engaged in light carpentry work one day. This work included some hammering, sawing and lifting. On another occasion the representatives reported seeing a second person doing the carpentry work with plaintiff merely watching and perhaps only supervising. On other days the observers saw no activity.

The examiner also selected various findings from different physical examinations made since 1959 and sent them, together with the field representatives' reports, to Dr. Herbert Griswold, a departmental chairman at the University of Oregon Medical School. Dr. Griswold, on the basis of these submitted matters, concluded that "much of the chest pain that this man complains of undoubtedly is not angina pectoris." Dr. Griswold also indicated forms of work he thought appropriate for plaintiff and then en-

1. The American Heart Association has established a classification system for diseased hearts. Functional class III includes "[P]atients with cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest. Less than ordinary activity causes fatigue, palpitation, dyspnea or anginal pain." Therapeutic class C includes "[P]atients with cardiac disease whose ordinary physical activity should be moderately restricted, and whose strenuous efforts should be discontinued."

2. The Master's exercise test, or Master's Two-Step Test, provides a means to esti-

mate myocardial efficiency. The patient makes a certain number of trips over a footstool consisting of two 9-inch steps in 30 seconds. Each person's age and weight determines the exact number of trips. It is apparently well established that angina can exist in the face of a normal result from a Master's test.

3. Functional Classification II of the American Heart Association includes "[P]atients with cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea or anginal pain."

gaged in speculation about plaintiff's motivation to work. He concluded that "the thing which distresses me most is that you have a relatively young man who due to either unwillingness to seek work or because of an inadequate personality has not really made a true effort to seek a position and maintain a useful gainful occupation since a heart attack in 1959." Plaintiff objected to the examiner's consideration of the field representatives' reports and Dr. Griswold's opinion, contending he had been deprived of his right to cross-examine. The examiner agreed and offered to arrange an opportunity to cross-examine if plaintiff would more specifically indicate the matters on which he desired to cross-examine. The plaintiff declined to do so, however, and instead stood on his general objection.

This court's scope of review in examining the Secretary's denial of benefits is prescribed in section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), which provides in relevant part:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

All agree plaintiff met the special earnings requirement for insured status when he filed his application on March 6, 1962. Likewise, the parties agree plaintiff must establish he was under a disability that began no later than June 6, 1962, to secure a disability "freeze", and no later than June 1, 1962, to secure disability insurance benefits. 42 U.S.C. §§ 416(i) (2), 423(c) (3). The only issue here, therefore, is whether the examiner's decision that plaintiff was not disabled at the relevant times is supported by substantial evidence. Sections 216(i) and 223, of the Act, 42 U.S.C. §§ 416(i) and 423, define "disability" as

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued or indefinite duration."

Substantial evidence, as this court has noted before, is "more than a scintilla, it is such evidence as a reasonable mind would accept as adequate in support of a conclusion." Johnson v. Flemming, 188 F.Supp. 447, 449 (D.Or. 1960). And the substantial evidence rule, while not permitting a *de novo* consideration of plaintiff's case in this court, still provides ample power to discover and overturn tendentious and unsupported fact-finding. The rule "does not constitute a basis for abdication of the Court's normal power and function of judicial review." Hughes v. Flemming, 195 F.Supp. 724, 726 (D.Or.1961).

A hearing examiner is entitled to make some evaluation of conflicting medical testimony in determining the question of disability. Thompson v. Flemming, 188 F.Supp. 123 (D.Or. 1960). However, the examiner may not enter a finding that contradicts substantial medical evidence unless that finding is itself supported by substantial medical evidence. Teeter v. Flemming, 270 F.2d 871 (7th Cir. 1959). Substantial evidence of disability unquestionably exists in this case. The examiner, however, concluded there was a "difference of opinion by specialists in internal medicine" and that "taking into account that Dr. Brandenburg has followed the claimant's course more closely than anyone else, the Hearing Examiner accords greater weight to the reports and opinions of Drs. Hurst, Rogers, Grant, Casterline and, *particularly*, Griswold." (Emphasis supplied.) A closer examination of the opinions of these doctors, however, leaves little basis for regarding them as substantial conflicting evidence. Dr. Casterline, at his last examination of plaintiff, was, as quoted earlier, "somewhat inclined to place [plaintiff] in the category of those individuals who are disabled for any significant physical activity." Drs. Hurst and Rogers, examining for the

Oregon Heart Association, engaged in considerable speculation about plaintiff's motivation to work but still classified his heart as II–III C and could offer a no more optimistic picture of plaintiff's work capacity than, also as quoted earlier, "working with occasional rest periods at something such as light housekeeping." Dr. Grant, examining for the Veterans' Administration, painted a somewhat more optimistic picture. Apparently, plaintiff is still receiving a pension from the Veterans' Administration for complete non service-connected disability. While the Secretary is, of course, not bound by the decision of the Veterans' Administration, it tends to compromise Dr. Grant's testimony and opinion. And Dr. Griswold, upon whom the examiner placed principal reliance in finding no disability, has never examined plaintiff or even seen him. One reason given by the examiner in his opinion for discounting favorable medical evidence was that most examining physicians, seeing plaintiff solely to evaluate his disability claim and not for treatment, were unable to observe him and, therefore, to evaluate his self-serving claims. That view, if applied consistently by the examiner, would seemingly place Dr. Griswold's opinions beyond real consideration.

■ As noted earlier, plaintiff objected to inclusion of the field representatives' reports and Dr. Griswold's conclusions in the record. The examiner, recognizing the force of this objection in light of § 7(c) of the Administrative Procedure Act,[4] offered the opportunity to cross-examine if plaintiff would note the matters on which he desired to question the representatives and Dr. Griswold. I believe this procedure complied with § 7(c) and that plaintiff, in refusing to specify, waived his right to cross-examine. While the examiner's actions, in secretly securing the representatives' reports and Dr. Griswold's opinions,

smack of bureaucracy rather than judiciousness, I withhold opinion of the examiner's initial authority in light of § 5(c) of the Administrative Procedure Act, 5 U.S.C.A. § 1004, pertaining to agency separation of functions, and when the examiner offered "opportunity for [plaintiff] to participate."

■ I cannot conclude that the Secretary's "final decision" (the examiner's disposition) is supported by substantial competent evidence and the plaintiff's motion for summary judgment will be granted and the Secretary's decision reversed, and the cause remanded with instructions to award the disability benefits allowed plaintiff by law.

Counsel for plaintiff should submit appropriate order.

---

4. Section 7(c) provides in part that "Every party shall have the right to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C.A. § 1006.