**Naomi COX, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. No. 64–155.**

United States District Court
D. Oregon.

April 30, 1965.

Johnson, Johnson & Harrang and James P. Harrang, Eugene, Or., for plaintiff.

Sidney I. Lezak, U. S. Atty., Donal D. Sullivan, Asst. U. S. Atty., Portland, Or., for defendant.

EAST, District Judge.

Plaintiff brings this proceeding to review the denial of her application for establishment of a period of disability and for disability benefits under §§ 216

(i) and 223(a) of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(a).

This action follows complete administrative consideration of plaintiff's claim, including a hearing before an examiner of the Bureau of Hearings and Appeals, Social Security Administration, and a refusal by the Bureau's Appeals Council to review the examiner's denial of relief. That refusal to review made the examiner's decision the final decision of the Secretary of Health, Education and Welfare and subject to this proceeding under § 205(g) of the Act, 42 U.S.C. § 405(g) which provides, in relevant part, that

"(A)ny individual, after any final decision of the Secretary made after a hearing to which he was a party * * * may obtain a review of such decision by a civil action * * brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business, * * * *"

The record reveals plaintiff is 55 years old, married, and has one child. Her advanced education consists of three months of college, a year of nurses' training, and some limited secretarial training. Plaintiff has held a number of largely unskilled jobs since her 1931 marriage, for example, knitting and sewing for a knitting shop, handling time cards and working part-time as a secretary, working in a feed store and for an accountant arranging work slips and running tallies on an adding machine. She also holds a license to sell real estate and has worked for a realty company. Plaintiff was last employed by an office equipment company where she worked as a saleslady, picked up machines for the repair shop, swept floors, occasionally prepared bills, made entries on debit and credit cards and made collection of delinquent accounts.

Since 1957 plaintiff has experienced severe circulatory problems in her legs. In 1959 her physician applied an Unna's paste (medicated) boot to relieve statis dermatitis of the left leg. Plaintiff then secured treatment from a vascular specialist. In May, 1961, he performed surgery that included a high litigation and stripping of varicose veins of the left leg. The operation was only partially successful, however, and pain and swelling continued. In July, 1961, plaintiff returned to her office for two weeks, but in August she was confined to bed and left the office equipment company payroll that month. In September plaintiff reentered the hospital for further treatment, was discharged from the hospital in October and has not worked since that time.

The medical record of plaintiff's condition after 1961 is fairly brief.

In March and September, 1962, Dr. Julius Hessel, a vascular specialist, examined plaintiff. In March he diagnosed her condition as a "post-phlebitic leg syndrome * * * probably aggravated by estrogen deficiency producing a Reynaud's-type phenomenon", believing there was no primary disease of the arterial system "except that as produced by vascular spasm." He indicated a fairly rigid program would have to be carried out and instructed plaintiff to resume taking estrogen. He also gave plaintiff some therapeutic vitamins and a prescription for arlidin. Dr. Hessel also noted plaintiff's apparently poor tolerance of elastic stockings and indicated a specially measured pair might be necessary. In September Dr. Hessel's objective findings were approximately the same. His examination revealed a moderate degree of increased vasomotor tone on both legs. The left leg was "moderately cyanotic and slightly edematous." He reported all pulsations were present in both legs and oscillations in both legs appeared bilaterally the same. Capillary venous filling times were within normal range. Pulsations and oscillations were improved. His diagnosis was "chronic post-phlebitic leg syndrome." However, he was "unable to relate the rather meager objective findings in this patient to her severe subjective symptoms." He believed plaintiff's principal difficulty was a "severe conversion hysteria" and he suggested a psychiatric consultation. He declared he did "not feel that this patient is totally disabled on the basis of her vascular prob-

lems, but she might be on the basis of her own interpretation of these problems."

Plaintiff's psychiatric examination by Dr. Wilford Brooksby revealed "no overt anxiety." He found "no evidence of any psychotic feature" and diagnosed a conversion reaction "manifested by chronic pain and some swelling secondary to a chronic post-phlebitic syndrome." However, he concluded plaintiff "now appears markedly impaired from doing productive work." He further noted her "picture appears quite chronic and fixed and the prognosis for eventual recovery would be quite guarded."

In January, 1963, Dr. Daniel Bond reexamined plaintiff. He found chronic uniform enlargement of the left leg and diagnosed chronic post-operative phlebitis. He noted no significant response to therapy since May, 1961, and instead indicated the left leg had become increasingly swollen since then. There was "no improvement—none can be expected * *." He indicated the "chronicity of pain and swelling," together with other factors, led him to believe the leg "has been made permanently worse." Dr. Bond also asserted the attempt to give plaintiff's physical difficulties an emotional basis "is a cruel subterfuge to cover up a bad clinical result and I would welcome the opportunity to challenge their contentions before any jury."

The record also contains plaintiff's testimony regarding limitations on her personal activities. On most mornings plaintiff must limber her leg with her husband's assistance before trying to walk. Plaintiff then applies hot packs. Her activities at home consist primarily of straightening the house, putting dishes in the dishwasher, clothes in the washing machine, and preparing supper. Plaintiff drives only occasionally and on long trips rides in the back seat with her leg elevated. She continues to take a diuretic, estrogen tablets, and aspirin.

The scope of review granted this court in examining the Secretary's decision is defined by section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). That section provides in relevant part:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * *."

No one contends plaintiff failed to meet the special earnings requirement for insured status when she filed her application on March 23, 1963. Likewise, the parties agree plaintiff must establish she was under a disability that began no later than June 23, 1963, to secure a disability "freeze" and no later than June 1, 1963, to secure disability insurance benefits. 42 U.S.C. §§ 416(i), 423(c)(3). For purposes relevant here, §§ 216(i) and 223 of the Act, 42 U.S.C. §§ 416(i) and 423, define "disability" as

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued or indefinite duration."

The sole issue before this court, therefore, is whether substantial evidence supports the Secretary's decision that plaintiff was not disabled at the relevant times.

Substantial evidence, as this court has noted before, is "more than a scintilla, it is such evidence as a reasonable mind would accept as adequate in support of a conclusion." Johnson v. Flemming, 188 F.Supp. 447, 449 (D.Or. 1960). The substantial evidence rule, of course, does not permit a *de novo* consideration of plaintiff's case in this court. On the other hand, that rule "does not constitute a basis for abdication of the Court's normal power and function of judicial review." Hughes v. Flemming, 195 F.Supp. 724, 726 (D.Or.1961).

The record here reveals a somewhat uncommon situation: unanimity of opinion

that plaintiff is, or may be, disabled, coupled with sharp, if not acrimonious, disagreement relating to cause. Dr. Hessel, as noted before, decided plaintiff was not disabled by her vascular problems but that "she might be on the basis of her own interpretation of those problems." Dr. Brooksby, a psychiatrist, then found a disabling conversion reaction. Dr. Bond, though also finding a disability, asserted it stemmed from plaintiff's vascular problems and heatedly depreciated any attempt to accord it an emotional basis.

■ The medical evidence in this case supporting a finding of disability, notwithstanding the disagreement regarding cause, unquestionably constitutes substantial evidence. And the hearing examiner's contrary decision must be overturned unless itself supported by substantial medical evidence, Vanderpool v. Celebrezze, 240 F.Supp. 801 (D.Or.1965), citing Teeter v. Flemming, 270 F.2d 871, 77 A.L.R.2d 636 (7th Cir. 1959), or unless the examiner was correct in holding that the diagnosed conversion reaction is not a "medically determinable physical or mental impairment" within the statutory definition of "disability" in 42 U.S.C. §§ 416(i), 423. The examiner, in his decision, noted that "(I)t is clear that the claimant's psychoneurosis, a functional mental disorder, is of insufficient severity to constitute a 'disability' under the Social Security Act. Section 404.1502(a) (Example 6) and section 404.1519(c)(2) of Regulations No. 4 of the Social Security Administration." [1]

■ I believe, however, that the examiner has implicitly given the definitional statutes an overly narrow reading and explicitly given the regulations an overly conclusive importance. The relevant statutes control here and the regulations purporting to define disability in more detail are merely interpretative regulations formulated as examples for administrative guidance. Those regulations do not constitute a conclusive definition of disability made pursuant to a grant of legislative power by Congress. [2] That definition has already been rendered, albeit very generally, by Congress itself. I have concluded that definition encompasses a conversion reaction if the other elements of disability—inability to engage in any substantial gainful activity and the likelihood the impairment will result in death or be of long-continued or indefinite duration—are satisfied, as they are in this case. I have also concluded that the examiner's decision is not supported by substantial evidence, thus requiring that it be overturned. Vanderpool v. Celebrezze, supra; Teeter v. Flemming, supra.

Accordingly, the plaintiff's motion for summary judgment will be granted, and the Secretary's decision will be reversed and the cause remanded to the Secretary

1. The regulations cited by the examiner provide very specific examples of conditions that may be disabling. However, as the regulations themselves admonish: "Conditions which fall short of the levels of severity indicated must also be evaluated in terms of whether they do *in fact* prevent the individual from engaging in any substantial gainful activity taking into account his age, education, training and work experience." 20 C.F.R. § 404.1502(b) (Emphasis supplied).

2. Two provisions in the Act relate to the authority to formulate regulations. 42 U.S.C. § 405(a) provides: "The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder." 42 U.S.C. § 1302 provides: "The Secretary of * * * Health, Education, and Welfare, * * * shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which (he) is charged under this chapter." And for an excellent discussion of legislative and interpretative rules, see Davis, *Administrative Law Text* §§ 5.01–.11 (1958).

with instructions to award the disability benefits allowed plaintiff by law.

Counsel for plaintiff should submit appropriate order.