**Virgil SWOPE, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. C–83–4408–WWS.**

United States District Court,
N.D. California.

July 6, 1984.

Terry LaPorte, San Jose, Cal., for plaintiff.

Glenda S. Robinson, Asst. U.S. Atty., San Francisco, Cal., for defendant.

## ORDER

SCHWARZER, District Judge.

This is an appeal pursuant to 42 U.S.C. § 405(g) from a final decision of the Secretary of Health and Human Services denying plaintiff Virgil Swope disability benefits. Plaintiff claims he has been disabled by liver disease since July 1980. The Administrative Law Judge (ALJ) found that plaintiff had been suffering from liver disease, but that the impairment did not become "severe" enough to be considered "disabling" under the Social Security Act until June 1981. Because plaintiff last met the special earnings requirement of the Act on September 30, 1980, the ALJ found that plaintiff was not entitled to disability insurance benefits. This case is before the Court on cross-motions for summary judgment. In the alternative, plaintiff requests remand of the matter to the Secretary.

Central to this appeal is the time at which plaintiff is to be considered to have been "disabled" within the meaning of the Social Security Act. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1). To be entitled to disability insurance benefits, claimants must establish that they were disabled at a time when they met the special earnings requirement of the Act. 42 U.S.C. § 423(c). To meet the special earnings requirement, claimants must show that they worked at least 20 of the 40 calendar quarters preceding the time at which he became disabled. 42 U.S.C. § 423(c)(1)(B). The ALJ found that in this case plaintiff met the special earnings requirement through September 30, 1980; that finding is not disputed. The ALJ also found that plaintiff suffered from an impairment which was not "severe" on or before September 30, 1980. For this reason, the ALJ found that plaintiff was not "disabled" on or before September 30, 1980, and, therefore, was not entitled to

disability insurance benefits. Thus, the time at which plaintiff became "disabled" is the primary issue before the Court. It is undisputed that plaintiff was disabled at the time of the hearing before the ALJ and had been since at least June 1981.

## I. BACKGROUND OF THE CLAIM

Plaintiff filed an application for disability insurance benefits and supplemental security income benefits on March 23, 1982, alleging that he had become unable to work because of liver disease in July 1980. Upon the Secretary's denial of disability benefits, plaintiff filed a Request for Reconsideration, which resulted in denial of benefits on Reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge, which was held on December 15, 1982. On May 25, 1983, the ALJ who conducted the hearing issued a decision finding that plaintiff did not have impairments sufficiently "severe" to be considered disabling under the Act and regulations on or before September 30, 1980, although plaintiff's impairments had become sufficiently "severe" to be considered disabling as of June 1981. The ALJ found that plaintiff was not entitled to disability insurance benefits because he had not become "disabled" under the Act on or before the last date on which plaintiff met the special earnings requirement, a prerequisite for eligibility for disability benefits.[1] Plaintiff filed a Request for Review by the Social Security Appeals Council in May 1982. The Appeals Council denied review in September 1983. The decision of the ALJ denying disability benefits thus became the final decision of the Secretary. Plaintiff commenced this action for review of the Secretary's decision pursuant to 42 U.S.C. § 405(g) on September 16, 1983.

## II. EVIDENCE PRESENTED TO THE ALJ

The ALJ reviewed medical reports from three doctors. Dr. Habib A. Tobbagi first examined plaintiff in October 1978 and treated him until June 1981. Dr. Joseph J. Fitzsimmons, an orthopedic surgeon, removed a tumor from plaintiff's left ankle in July 1980. Dr. Peter Gregory, Associate Professor of Clinical Medicine at Stanford University Medical School, Division of Gastroenterology, began treating plaintiff in September 1981. The ALJ also reviewed plaintiff's medical records from San Jose Hospital and Stanford University Medical Center. Finally, plaintiff testified at the hearing as to his physical condition.

Plaintiff was 57 years old at the time of the hearing and had completed 16 years of education. He had been the owner of an ice cream manufacturing company from 1965 to 1974. From 1976 to 1977, plaintiff was part owner and president of a photo equipment company. He began working as a security guard in 1979. Plaintiff testified that he stopped working as a security guard in July 1980 because his fatigue prevented him from working even a four-hour shift and because he was unable to walk to make his rounds. Plaintiff stated that the lapses between employment were due to long periods of illness during which he was unable to work. Plaintiff had slept twelve hours at night and took a nap of one to three hours per day since 1980, increasing to four-hour naps per day in 1982. Plaintiff had engaged in no social activities and had not driven since 1980. He attempted to return to work as a security guard in June 1981, but was hospitalized with intestinal bleeding six days later and has not returned to work since that time.

Dr. Gregory stated that plaintiff's liver disease dated from 1970, when plaintiff's fatigue began and liver function tests showed abnormal results. A liver biopsy in 1973 showed chronic hepatitis. Dr. Gregory reported that shortly thereafter plaintiff

---

1. The ALJ then made findings to determine whether plaintiff was "disabled" under the Social Security Act for the purpose of receiving Supplemental Security Income. The tests for determining disability in order to participate in the SSI program are essentially the same as the tests for determining disability to qualify for disability insurance benefits. The ALJ found that plaintiff was "disabled" for SSI purposes as of June 1981. However, plaintiff was not eligible for SSI because he did not meet the income requirements under the program.

was noted to have a depressed platelet count, a symptom of liver dysfunction.

Dr. Tobbagi first examined plaintiff in October 1978. He treated plaintiff for weakness, a tendency to bleed easily, and rectal bleeding from October 1978 until June 1981 when Dr. Tobbagi referred plaintiff to Dr. Gregory's care at Stanford University Medical Center. Dr. Tobbagi reported that plaintiff's chronic liver dysfunction and chronic hepatitis caused him to require long periods of rest on most days during this period. Dr. Tobbagi also stated that the tumor in plaintiff's left ankle resulted from his liver disease. This tumor was surgically removed by Dr. Fitzsimmons in July 1980.

Dr. Fitzsimmons, the orthopedic surgeon who removed the tumor, first examined plaintiff in March 1980. Plaintiff complained of pain and swelling in the entire medial malleolus area on the left ankle. He saw plaintiff again on June 17, 1980. The tumor had enlarged and was discolored. Plaintiff underwent outpatient surgery on July 9, 1980, at San Jose Hospital for removal of the tumor. Plaintiff developed a hematoma that was open after surgery, but Dr. Fitzsimmons reported that plaintiff did fairly well postoperatively. Dr. Fitzsimmons examined plaintiff again on January 28, 1981. There was pitting edema about the malleolus and increased warmth from that area. Plaintiff had pain when he put weight on the left foot and tried to walk.

Plaintiff was hospitalized for acute gastrointestinal bleeding from June 19, 1981, to June 29, 1981, roughly a week after he attempted to return to work. After diagnostic testing at San Jose Hospital, Dr. Tobbagi concluded that plaintiff had chronic liver disease, a duodenal ulcer, and hemorrhoids. Dr. Tobbagi reported that the intestinal bleeding was due to a deep, bleeding duodenal ulcer, which was actively bleeding when an endoscopy was performed. Plaintiff was released from the hospital because his condition had been stable throughout the hospitalization, but he was to return to the hospital for an open liver biopsy at a later date. Dr. Tobbagi referred plaintiff to Dr. Gregory for treatment of plaintiff's liver condition.

Dr. Gregory first examined plaintiff in September 1981. An open liver biopsy was performed in October 1981. The liver was described as grossly nodular, shrunken, and the portal pressure was elevated at 280 mg of water. Plaintiff was diagnosed as having advanced cirrhosis. In November 1982, Dr. Gregory stated that the liver disease definitely dated from 1970 although it was not diagnosed until October 1981. He noted that plaintiff suffered from increasing fatigue and poor exercise intolerance which had become severe over the previous ten years. Dr. Gregory stated that these symptoms were not surprising given the advanced nature of the cirrhosis that was established in October 1981. Dr. Gregory also stated that it was likely that plaintiff had advanced cirrhosis with portal hypertension by July 1980 because his platelet count was reduced to 61,000 at that time. Dr. Gregory stated that plaintiff's advanced cirrhosis, pancytopenia, abnormal liver function, and profound fatigue would have made it very difficult for plaintiff to sustain any work activity. Based on past records, the findings at Stanford Hospital, and his observations of plaintiff from September 1981 to November 1982, Dr. Gregory stated that "it is inconceivable to me that Mr. Swope could have worked on a continuous basis from July of 1980. I am quite surprised that he was even able to work on a continuous basis prior to that time."

Dr. Fitzsimmons agreed with Dr. Gregory's conclusions. On February 14, 1983, Dr. Fitzsimmons stated that plaintiff would not have been able to work on a continuous basis as a security guard from July 1980. In reaching this conclusion, Dr. Fitzsimmons considered plaintiff's leg length inequality, knock-kneed deformity and weight, his flatfootedness, and the postoperative heat from his lower left ankle, in addition to his chronic viral hepatitis and poor overall habitus (i.e., state of health and susceptibility to disease).

## III. THE ALJ'S DECISION

The ALJ found that the plaintiff met the special earnings requirement of the Social Security Act on July 14, 1980, and continued to meet it until September 30, 1980. He found plaintiff did not have any impairment or impairments which significantly limited his ability to perform basic work-related functions on or before September 30, 1980. Therefore, he concluded that plaintiff did not have a "severe" impairment on or before that date under 20 C.F.R. § 404.-1520(c). The ALJ found plaintiff's testimony concerning his fatigue and pain credible, but he decided that plaintiff was not entitled to disability insurance benefits under 42 U.S.C. § 416(i) and § 423.[2]

## IV. EVALUATION OF THE ALJ'S DECISION

Plaintiff asserts that the Secretary's decision should be reversed and that the Court should direct the Secretary to pay plaintiff disability benefits. First, plaintiff challenges the validity of the regulations upon which the ALJ relied in denying disability benefits to plaintiff. Second, plaintiff argues that, even if the regulation is valid, the findings of the Secretary are not supported by substantial evidence, both because the ALJ rejected uncontradicted medical opinions without clear and convincing reasons for doing so, and because he failed to make specific findings concerning plaintiff's ability to perform basic work activities.

### A. VALIDITY OF THE REGULATION

The Secretary has devised a sequential series of tests for evaluation of a claim for disability benefits which are embodied in regulations at 20 C.F.R. § 404.1520. If a disposition of the claim can be made at any step, the evaluation of the claim stops at that step. The tests were summarized in *Goodermote v. Secretary of Health, Education and Welfare*, 690 F.2d 5, 6–7 (1st Cir.1982), as follows:

First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.

Second, does the claimant have a severe impairment? A severe impairment means an impairment which "significantly limits his or her physical or mental capacity to perform basic work-related functions." If a claimant does not have an impairment of at least this degree of severity, the claimant is automatically considered not disabled.

Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an impairment so serious a degree of severity, the claimant is automatically found disabled.

These first three tests are "threshold" tests.... If, however, his ability to perform basic work-related functions is impaired significantly (test 2) but there is no "Appendix 1" impairment (test 3), the SSA goes on to ask the fourth question:

Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

In this case, the ALJ determined that plaintiff did not have a "severe" impairment at the second test on the relevant date and that plaintiff was therefore not entitled to disability benefits. It is the validity of this second test, 20 C.F.R. § 404.1520(c), that is questioned in this action.

The regulation at 20 C.F.R. § 404.1520(c) provides in part:

[i]f you do not have any impairment(s) which significantly limits your physical

---

**2.** The ALJ also evaluated plaintiff's claim for disability in connection with plaintiff's request for Supplemental Security Income (SSI). The ALJ found that as of June 1981 plaintiff did not have an impairment or impairments equivalent to one listed in Appendix 1, Subpart P, of the regulations, that plaintiff was unable to perform past work, and that plaintiff was unable to engage in any other substantial gainful employment. Therefore, the ALJ found plaintiff "disabled" for SSI purposes as of June 1981 pursuant to 20 C.F.R. § 316.920(f).

or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.

"Basic work activities" are defined as including the ability to walk, stand, sit, lift, push, pull, reach, carry, handle, see, hear, speak, understand simple instructions, carry out simple instructions, remember simple instructions, and to use judgment. 20 C.F.R. § 404.1521(b). Plaintiff contends that this regulation allows the Secretary to consider the "severity" of an impairment without considering the impact of that impairment on plaintiff's ability to perform past work or any other kind of work. This, plaintiff argues, violates the plain meaning of the Social Security Act, 42 U.S.C. § 423(d)(2)(A), which states that an individual is under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." Plaintiff argues that the regulation should be declared invalid as in violation of the Social Security Act because it allows the Secretary to deny disability benefits upon a finding of a "nonsevere" impairment without consideration of vocational factors.

 Judicial review of regulations authorized by statute is limited to determining whether the Secretary exceeded his or her authority in promulgating them or whether they are capricious. *Herweg v. Ray*, 455 U.S. 265, 102 S.Ct. 1059, 71 L.Ed.2d 137 (1982). The regulation to be reviewed in this case establishes a threshold test for disability determinations that focuses on medically determinable impairments. It links the impairment with the effect the impairment has on a claimant's ability to perform basic work activities. If the impairment significantly interferes with the claimant's ability to perform basic work-related activities, the claimant may not be able to engage in past work or any other work; in this case, the five-step regulatory scheme requires the Secretary to proceed to the next phase of the inquiry. On the other hand, if a claimant suffers from an impairment but the impairment does not significantly interfere with the claimant's ability to perform basic work activities, the claimant can obviously engage in substantial gainful employment. Therefore, an evaluation of vocational factors to determine what specific jobs the claimant can perform is unnecessary to find the claimant not disabled. Because the Act defines disability as the inability to engage in any substantial gainful employment, the "severity" test thus falls within the plain language of the statute.

Moreover, the legislative history of the Act demonstrates that Congress specifically contemplated a threshold "severity" test. The requirements of both 42 U.S.C. § 423(d)(3) and § 423(d)(5) show Congress's primary reliance on medical factors in disability determinations. The vocational factors used in determining disability and referred to in 42 U.S.C. § 423(d)(2)(A) were not introduced into the Act until 1968 by amendment. The Senate Report accompanying the 1968 amendments indicates that Congress did not intend that the use of vocational factors in determining disability should preclude a threshold severity test based on medical factors:

> [T]he committee's bill would provide guidelines to reemphasize the predominant importance of medical factors in the disability determination.... The bill would provide that such an individual would be disabled only if it is shown that he has a severe medically determinable physical or mental impairment ...

S.Rep. No. 744, 90th Cong., 1st Sess. 2, *reprinted in* 1967 U.S.Code Cong. & Ad. News 2834, 2882. The regulations which incorporate the severity test thus do not exceed the Secretary's statutory authority, and they place primary importance on medical factors in the disability determination process as Congress intended.

Plaintiff incorrectly asserts that the regulation excludes consideration of plaintiff's ability to work. However, the regulation

specifically relates the determination of severity to the claimant's ability to perform "basic work activities." An impairment which does not significantly limit the claimant's ability to perform these "basic work activities" is not "severe." 20 C.F.R. § 404.1521(a). The regulation is thus a valid exercise of the Secretary's statutory authority and is not capricious. See *Cummins v. Schweiker*, 670 F.2d 81 (7th Cir. 1982); *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524 (6th Cir. 1981); *Thomas v. Schweiker*, 666 F.2d 999 (5th Cir.1982); *Moore v. Heckler*, 575 F.Supp. 180 (D.Me.1983).[3]

### B. SUBSTANTIAL EVIDENCE

■ Plaintiff claims that there was not substantial evidence to support the ALJ's findings that plaintiff's impairment was not "severe" on or before September 30, 1980. Substantial evidence is such evidence as a reasonable mind would accept as adequate to support a conclusion. *Cox v. Celebrezze*, 240 F.Supp. 1013, 1016 (D.Or.1965). In determining whether there is substantial evidence to support the ALJ's findings, the court must look to the record as a whole, *Cox v. Califano*, 587 F.2d 988, 990 (9th Cir.1978), but resolution of factual conflict and the drawing of all reasonable inferences is the job of the ALJ and not within the scope of the court's review. *Harvey v. Richardson*, 451 F.2d 589, 590 (9th Cir. 1971).

### 1. *Uncontradicted Medical Opinion*

■ The ALJ may not reject uncontradicted medical opinion that a claimant is disabled without stating clear and convincing reasons for doing so. If the ALJ fails to state clear and convincing reasons for rejecting uncontradicted medical opinion, his findings of nondisability are not supported by substantial evidence. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.

1975). Dr. Gregory reported that plaintiff could not have worked on a continuous basis from July 1980 because of chronic liver disease which caused profound fatigue. Dr. Fitzsimmons stated that plaintiff would not have been able to work from the first time he examined plaintiff in March 1980 through February 1983, when he wrote his report, because of plaintiff's chronic liver disease, plaintiff's ankle condition which required surgery in July 1980, and his overall habitus. Although Dr. Tobbagi did not state any express opinion as to when plaintiff became disabled, he noted that plaintiff required long periods of rest due to his liver disease on most days while plaintiff was under his care, which began in 1978. Dr. Tobbagi also stated that the tumor in plaintiff's ankle was caused by his liver disease. These statements support the opinions of Dr. Gregory and Dr. Fitzsimmons.

■ The ALJ rejected all these reports, apparently on the ground that the time periods of the reports did not match the time of the impairments. He rejected Dr. Gregory's opinion that the claimant was unable to work as of July 1980 because of cirrhosis for two reasons. First, the ALJ stated that the medical records indicated that plaintiff stopped working in July 1980 because of a tumor in his lower left extremity and not because of liver disease. Second, the ALJ stated that Dr. Gregory did not examine the plaintiff until September 1981. Neither reason has substance. As for the ALJ's first reason, the uncontradicted medical opinion was that plaintiff's tumor was the result of the liver disease, not a separate, unrelated condition. Furthermore, the tumor prevented plaintiff from walking, significantly affecting plaintiff's ability to perform basic work activity.

As for the second reason, although Dr. Gregory did not examine plaintiff until Sep-

---

**3.** Plaintiff relies on the holding of *Scruggs v. Schweiker*, 559 F.Supp. 100 (M.D.Tenn.1982), in support of his argument that the regulation is invalid. The question of the validity of the regulation was not raised in that case. The issue before the Court was whether a finding of a "non-severe" impairment without any findings

as to whether plaintiff could perform basic work activities was supported by substantial evidence. Although the Court criticized the "severity" test in dicta, it held only that there was not substantial evidence to support the ALJ's finding of a non-severe impairment. It is therefore inapposite.

tember 1981, he based his opinion on a large amount of hard clinical data, some of which was contemporaneous with the time at which plaintiff claims he became disabled. Dr. Gregory stated that liver function tests with abnormal results were first noted in 1970, that a liver biopsy performed in 1973 showed that plaintiff had chronic hepatitis, and that plaintiff's platelet count was noted to be depressed shortly after that time. By July 1980, plaintiff's platelet count was reduced to 61,000, a sign of advanced liver disease. Based on this medical history as well as his own observations and the results of a 1981 liver biopsy, Dr. Gregory, a specialist in internal medicine and a professor at Stanford University Medical School, concluded that plaintiff's liver disease dated from 1970 and that it was severe by July 1980 at the latest. No doctor interpreted the data on which Dr. Gregory relied differently. Dr. Gregory's opinion was also supported by the medical opinions of two other doctors, both of whom were treating plaintiff at the time plaintiff contends he became disabled. Plaintiff's testimony about his fatigue and pain, which the ALJ specifically found credible, also supported Dr. Gregory's opinion. No medical evidence in the record or any inferences drawn by any physician from that evidence contradicted Dr. Gregory's conclusion.[4] The ALJ's reasons for rejecting Dr. Gregory's uncontradicted medical opinion are unconvincing when the record is reviewed as a whole.

The ALJ also rejected Dr. Fitzsimmons opinion that plaintiff was unable to work continuously from March 1980, when he first examined plaintiff, through February 1983, when he made his report. The ALJ stated that he rejected Dr. Fitzsimmons's opinion because he wrote the report two years after the last time he examined plaintiff. However, Dr. Fitzsimmons was treating plaintiff in July 1980, the time at which plaintiff claims he became disabled, and based his opinion on hard clinical evidence dating from that time. Dr. Fitzsimmons stated that as of January 1981, plaintiff was unable to walk without pain and that there was increased warmth from the malleolus. He clearly stated that his assessment of plaintiff's inability to work throughout this period was based on plaintiff's chronic hepatitis, postoperative heat in the lower left extremity, painful gait, and overall habitus. The ALJ's reason for rejecting Dr. Fitzsimmons's opinion is also not convincing.

Finally, the ALJ does not state any reason for rejecting Dr. Tobbagi's opinion that plaintiff's tumor in his left ankle which required surgery in July 1980 was prompted by plaintiff's liver disease and was not a condition unrelated to it. No medical evidence contradicted Dr. Tobbagi's opinion. In fact, no medical evidence contradicts the conclusions reached by all three doctors, two of whom agreed that plaintiff was disabled by July 1980 at the latest. The ALJ's reasons for rejecting these opinions are without foundation. Without stating clear and convincing reasons for rejecting uncontradicted medical opinion, the ALJ's finding that plaintiff was not disabled on or before September 30, 1980, is not supported by substantial evidence. *Day v. Weinburger*, 522 F.2d 1154 (9th Cir.1975).

### 2. *Application of the Regulation*

The ALJ based his finding that plaintiff was not disabled upon his finding that

---

4. On appeal, the government makes much of Dr. Tobbagi's introductory remarks in a letter to plaintiff's attorney dated September 10, 1982, that plaintiff "had been in his usual state of health and able to perform his usual daily security guard occupation" until plaintiff was hospitalized in June 1981. Although the letter was included in the record, the ALJ did not rely on it in his findings. Further, the statement is difficult to reconcile with the remainder of the letter. The letter goes on to note how poor plaintiff's "usual state of health" in fact was at that time. As for Dr. Tobbagi's remark concerning plaintiff's ability to perform his "usual daily security guard occupation," it must be noted that plaintiff had not worked at this occupation since July 1980 until he returned to it less than a week before requiring hospitalization. The statement's lack of grounding in any concrete clinical data as well as its apparent ignorance of plaintiff's actual work activities requires the Court to accord it minimal significance. It could not be considered substantial evidence to support the Secretary's decision, even had the Secretary relied on it.

plaintiff's impairment was not "severe." 20 C.F.R. § 404.1520(c). However, the ALJ made no specific findings as to what basic work-related functions plaintiff was capable of performing. Moreover, there is no evidence in the record that suggests plaintiff was not significantly limited in his ability to perform these functions.

 The ALJ must make findings as to a claimant's ability to perform basic work activities. A conclusory statement that an impairment does not significantly limit the claimant's ability to perform basic work functions and that the impairment is therefore not "severe" is not sufficient. *Small v. Califano,* 565 F.2d 797 (1st Cir.1977); *Trafton v. Heckler,* 575 F.Supp. 742 (D.Me. 1983); *Scruggs v. Schweiker,* 559 F.Supp. 100 (M.D.Tenn.1982). In this case, the ALJ made only a conclusory finding that plaintiff's impairment did not significantly interfere with his ability to perform basic work activities without making any findings as to what, if any, basic work-related activities plaintiff could have performed.

Nor is there substantial evidence in the record supporting the ALJ's conclusion. The record establishes that plaintiff could not walk and required long periods of rest every day as of July 1980. Dr. Gregory stated that it was "inconceivable" that plaintiff could have sustained any work activity as of July 1980 because of his progressive, advanced liver disease. Plaintiff testified to his profound fatigue and pain when he attempted to walk, testimony the ALJ specifically credited. No substantial evidence indicates that plaintiff's impairment did not significantly interfere with his ability to perform basic work activities.

## V. DISPOSITION

The Secretary failed to make the detailed findings required by law to document and support her conclusion that plaintiff's impairment was not "severe" on or before September 30, 1980. No substantial evidence in the record supports this conclusion. The Secretary's conclusion that plaintiff was not "severely" impaired on or before September 30, 1980, was reached only by rejecting the uncontradicted medical opinions of three treating physicians. The Court has the discretion to decide whether to reverse the Secretary's decision denying disability benefits or to remand the matter for further proceedings when the Secretary fails to make adequate findings or fails to make findings supported by substantial evidence. If a rehearing will simple delay receipt of benefits, reversal is appropriate. *Lewin v. Schweiker,* 654 F.2d 631 (9th Cir.1981). In this case, the evidence on plaintiff's side is strong and uncontradicted. A rehearing of the matter would only delay an award of disability benefits which, on this record, would be inevitable.

Therefore, plaintiff's motion for summary judgment is granted. Defendant's motion for summary judgment is denied. Judgment will be entered for plaintiff, plaintiff to recover his costs.

IT IS SO ORDERED.