**Pamela A. STONE, Plaintiff-Appellant,**

**v.**

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 84–3994.**

United States Court of Appeals, Ninth Circuit.

Submitted April 5, 1985.[*]

Decided May 21, 1985.

---

**\*** The panel finds this case appropriate for submission without oral argument pursuant to Fed.R. App.P. 34(a); 9th Cir.R. 3(f).

Jan Perkins, Kalamath Falls, Or., for plaintiff-appellant.

Richard H. Wetmore, Seattle, Wash., for defendant-appellee.

Before FLETCHER and NELSON, Circuit Judges, and LYNCH,** District Judge.

FLETCHER, Circuit Judge:

Pamela Stone appeals from an order of the district court upholding the Secretary's finding that her husband, Glen Stone, was not disabled.[1] We reverse.

In March 1980, Stone applied for disability benefits. Stone had diabetes and was insulin dependent. He suffered from neuropathic joint disease and bone degeneration in his feet. Stone has since died, although the record does not indicate the cause of death.

Following a hearing, the administrative law judge (ALJ) found that Stone's impairments prevented him from performing any of his previous work, but that he had residual functional capacity to perform sedentary work. The ALJ then applied the medical-vocational guidelines,[2] see 20 C.F.R. pt. 404, app. 2, (1984), and concluded that Stone was not disabled. The Appeals Council denied review of the ALJ's decision.

The district court, following our decision in *Hall v. Secretary of Health, Education & Welfare*, 602 F.2d 1372, 1377 (9th Cir. 1979), ruled that the Secretary could not rely solely on the medical-vocational guidelines and remanded for findings on whether there were specific jobs Stone was capable of performing. The Secretary appealed and, based on the Supreme Court's intervening decision in *Heckler v. Campbell*, 461 U.S. 458, 468, 103 S.Ct. 1952, 1958, 76 L.Ed.2d 66 (1983), we reversed and remanded for the district court to determine if the ALJ properly applied the guidelines and if the guidelines accurately described Stone's condition. *Stone v. Heckler*, 722 F.2d 464, 468 (9th Cir.1983). On remand, the district court affirmed the Secretary's decision.

Stone raises two issues on appeal. First, he contends that the Secretary's finding that his neuropathic joint disease did not limit his capacity for sedentary work is not supported by substantial evidence. Second, Stone contends that, because the medical-vocational guidelines did not accurately describe his abilities and limitations, the ALJ should not have relied solely on them to conclude that a significant number of jobs were available to Stone despite his limitations. Because we agree with Stone's first contention, we do not reach the second.

We will set aside the denial of a disability claim only if the Secretary's findings are not supported by substantial evidence in the record as a whole or the Secretary applied improper legal standards. *Allen v. Secretary of Health & Human Services*, 726 F.2d 1470, 1472 (9th Cir.1984); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir.1982). Substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28

---

** Hon. Eugene F. Lynch, United States District Judge for the Northern District of California, sitting by designation.

1. Glen Stone was the original plaintiff in this case, but, after his death, his wife was substituted as plaintiff, pursuant to order of this court. Fed.R.App.P. 43(a). For convenience, we refer to Glen Stone throughout this opinion.

2. As part of the 1978 regulations, the Secretary developed a matrix of medical-vocational guidelines in an effort to improve the uniformity and efficiency of disability determinations. The guidelines indicate whether there are a significant number of jobs in the national economy that an individual is capable of performing when his residual functional capacity, age, education and work experience correspond to one of the Medical-Vocational Rules.

L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). *Accord Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1984). Our review is essentially the same as that undertaken by the district court. We consider the district court's decision, but the statutory scheme mandates a full review of the facts by our court and an independent determination as to whether the Secretary's findings are supported by substantial evidence. *See Leftwich v. Gardner*, 377 F.2d 287, 288 (4th Cir.1967); *Farley v. Celebrezzi*, 315 F.2d 704, 705–06 (3d Cir.1963).

■ After a claimant satisfies his initial burden of showing that a physical or mental impairment prevents him from performing his previous work, the burden shifts to the Secretary to show that the claimant has the capacity to perform other work and that such other work exists in the national economy. *Bonilla v. Secretary of Health, Education & Welfare*, 671 F.2d 1245, 1246 (9th Cir.1982) (per curiam). *Accord Allen v. Secretary of Health & Human Services*, 726 F.2d at 1472; *Thompson v. Schweiker*, 665 F.2d at 939.

■ Stone proved that, because of his neuropathic joint disease, he was incapable of returning to his past work as service station attendant, truck driver, security guard, coinroom operator or dishwasher. The ALJ found, however, based on Stone's testimony and several medical reports, that Stone was capable of performing sedentary work.[3] We conclude that the ALJ's finding is not supported by substantial evidence.

Stone's orthopedist, Dr. Mauer, described Stone's neuropathic joint disease as a progressive destruction of the weight-bearing joints in the lower extremities. The medical reports submitted by Dr. Maurer from September 1978, when he first saw Stone, through October 1980, reveal continuing degenerative changes in the joints in Stone's right foot.

In evaluating Stone's residual functional capacity, the ALJ relied on medical reports from July and August of 1980, and the Social Security advisors' conclusions, based on even earlier reports. The ALJ failed to consider Dr. Maurer's most recent evaluation of Stone, dated October 29, 1980. That report, made six days before the hearing, indicated further deformity of Stone's right foot and radiographic changes indicating the same degenerative process beginning in his left foot. Dr. Maurer concluded that "it would be impossible for Mr. Stone to be gainfully employed in a position requiring the use of his lower extremities."

Because Stone's condition was progressively deteriorating, the most recent medical report is the most probative. Earlier medical evaluations, based on Stone's condition several months before, do not constitute substantial evidence to rebut the conclusions contained in Dr. Maurer's final report. The determinations of the Social Security medical advisors, made without examining Stone or reviewing either of Dr. Maurer's last two reports, are entitled to even less weight.

The ALJ also relied on Stone's testimony that he would be able to work from a seated position, that he helped with chores around the house, and that he had recently been duck hunting from a seated position inside a duck blind. This testimony does *not* indicate how often Stone performed these activities, nor the amount of standing or walking they required. It therefore does not support the ALJ's conclusion that Stone could do the occasional walking and standing necessary for "sedentary work." *See* 20 C.F.R. § 404.1567(a).[4]

■ When an administrative law judge disregards the opinion of the treating phy-

---

**3.** The Secretary defines sedentary work as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally...." 20 C.F.R. § 404.1567(a) (1984).

**4.** *See supra* note 3.

sician "he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983) (citation omitted). *Accord Valencia v. Heckler,* 751 F.2d 1082, 1088 n. 7 (9th Cir.1985). The ALJ's opinion in this case fails even to mention Dr. Maurer's final report, much less make findings setting forth reasons for disregarding it.[5] We can find no substantial evidence in the record that would serve as a basis for disregarding it. Accordingly, we conclude that the ALJ's determination that Stone had the residual functional capacity to perform sedentary work is not based on substantial evidence.

 The decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court. *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir.1981). *Accord Kail v. Heckler,* 722 F.2d 1496, 1497 (9th Cir.1984). In light of Stone's death and the age of this case, it would be virtually impossible for the Secretary to adduce new medical evidence to support a finding that Stone was not disabled. The record here is thoroughly developed. Further administrative proceedings would only prolong this already lengthy process and delay receipt of benefits. *See Lewin v. Schweiker,* 654 F.2d at 635–36 (reversal appropriate where record fully developed and rehearing would simply delay benefits). *Accord Podedworny v. Harris,* 745 F.2d 210, 221–22 & n. 11 (3d Cir.1984); *Robinson v. Heckler,* 593 F.Supp. 737, 743 (D.D.C.1984); *Swope v. Heckler,* 592 F.Supp. 803, 811 (N.D.Cal. 1984). Therefore, we reverse the judgment of the district court and remand with directions to enter judgment in favor of Stone.

REVERSED and REMANDED.

**5.** The absence of findings in this case should be compared with the ALJ's findings in *Allen v. Heckler,* 749 F.2d 577, 580 (9th Cir.1985) (Norris, J., concurring). In that case, the ALJ disregarded the treating physician's opinion because it was conclusory and was based on the subjective statements of the claimant. *Id.* Moreover, the ALJ in *Allen* favored the consulting physician's report because he found it to be unbiased, while the treating physician had taken on the role of the claimant's advocate. *Id.* Here, the ALJ did not even mention the treating physician's report. The rule we announced in *Murray* is thus fully applicable in this case. *But see Allen v. Heckler,* 578–579 (majority opinion, suggesting in dicta that *Murray* should be limited).