Marta NELSON, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. Civ. 98–1632–AA.

United States District Court, D. Oregon.

Jan. 31, 2000.

Alan Stuart Graf, Swanson, Thomas & Coon, Portland, OR, for plaintiff.

Kristine Olson, United States Attorney, District of Oregon, William W. Youngman, Assistant United States Attorney, Portland, Oregon, Richard H. Wetmore, Special Assistant U.S. Attorney, Seattle, Washington, for defendant.

## OPINION AND ORDER

AIKEN, District Judge.

Claimant, Marta Nelson, brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB). For the reasons set forth below, the Commissioner's decision is reversed and remanded for benefits.

## BACKGROUND

Plaintiff filed an application for DIB December 15, 1993. Tr. 412–415.[1] The application was denied initially and on reconsideration. Tr. 425–27, 431–32. A hearing was held on February 14, 1995, where plaintiff appeared and testified before an Administrative Law Judge ("ALJ") Tr. 94–142. Also appearing and testifying were David Rullman, M.D., a medical expert, and Gary Jeskey, a vocational expert. On April 8, 1996, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act. Tr. 529–36. Although the ALJ found that plaintiff suffered from severe chemical sensitivities, the ALJ found that she retained the residual functional capacity to perform her past relevant work. Plaintiff filed an appeal to the Appeals Council, and on March 12,

---

1. Plaintiff filed a prior application for DIB on January 17, 1991. That application was denied initially and on reconsideration. After hearing before an ALJ, the ALJ issued a decision finding that plaintiff had no severe impairments within the meaning of the Act and was not disabled. Plaintiff did not appeal this decision.

1997, the Appeals Council remanded the case with instruction for the ALJ to further develop the record regarding plaintiff's credibility and earnings. Tr. 549–550.

A final hearing before an ALJ was held on June 10, 1997. Plaintiff and Hanoch Livneh, a vocational expert, testified at the hearing. Tr. 143–183. On October 16, 1997, the ALJ again issued a decision finding that plaintiff was not disabled because she could perform her past relevant work. Tr. 15–24. The Appeal Council denied plaintiff's request for review, making the ALJ's decision the final agency decision. Tr. 4–5. Plaintiff now seeks judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g).

At the time of the hearing, plaintiff was forty-five years old with past relevant work as a technical writer, drug counselor, high school teacher and custom furniture designer. Tr. 17. Plaintiff holds Bachelor of Arts and Science degrees in psychology and computer science. Tr. 17. Plaintiff initially alleged disability since March 11, 1993, due to porphyria and multiple chemical sensitivities triggered while working as a technical writer for Intel and Sequent. Tr. 412, 448. However, when seeking review from the Appeals Council, plaintiff sought benefits for two closed periods: from March 1993 through December 31, 1994, and from January 1996 to March 8, 1997. Tr. 9.

### STANDARD OF REVIEW

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir.1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." *Martinez v. Heckler,* 807 F.2d 771, 772 (9th Cir.1986).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler,* 782 F.2d 1484, 1486 (9th Cir.1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential evaluation for determining whether a person is disabled. *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); 20 C.F.R. § 404.1502. First the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Yuckert,* 482 U.S. at 140, 107 S.Ct. 2287; 20 C.F.R. § 404.1520(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert,* 482 U.S. at 140–41, 107 S.Ct. 2287; *see* 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.; see* 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. *Yuckert,* 482 U.S. at 141, 107 S.Ct. 2287.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can work, he is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work. *Yuckert,* 482 U.S. at

141–42, 107 S.Ct. 2287; *see* 20 C.F.R. § 404.1520(e) & (f). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, he is not disabled. 20 C.F.R. § 404.1566.

### DISCUSSION

A review of the administrative record reveals that plaintiff is seeking benefits for two closed periods: March 11, 1993 through December 31, 1994, and January 1, 1996, through March 8, 1997. Tr. 9, 11. Plaintiff conceded this point when seeking review from the Appeals Council. Tr. 9. Therefore, I consider whether plaintiff is eligible for benefits only during the closed periods identified. *See Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir.1999) (claimant must raise all issues in administrative proceedings to preserve for review).

The ALJ found that plaintiff met the insured status requirements on March 11, 1993, but that she engaged in substantial gainful activity throughout 1995 and from March 9, 1997. The ALJ found that plaintiff suffered from severe multiple chemical sensitivities, but that she did not have an impairment equal to the listings. The ALJ further found plaintiff's testimony regarding her subjective complaints not fully credible. The ALJ found that plaintiff had the residual functional capacity to perform sedentary and light work in a clean air environment where she is not exposed to more than minimal airborne pollutants. The ALJ found that plaintiff's past relevant work as a technical writer and care provider were not precluded by plaintiff's limitations. Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

### A. Opinion and Conclusion of Examining Physician

The ALJ rejected the opinion of an examining physician, Dr. Morton, who diagnosed plaintiff with porphyria and opined that plaintiff was unable to perform substantial gainful work activity because of her illness. Tr. 478–79. The ALJ instead relied on the opinion of a non-treating,

non-examining physician who testified that he did not think plaintiff suffered from porphyria.

■ In disability cases, "more weight is given to a treating physician's opinion than to the opinion of a nontreating physician." *Andrews v. Shalala,* 53 F.3d 1035, 1040–41 (9th Cir.1995). Likewise, "greater weight is accorded to the opinion of an examining physician than a non-examining physician." *Andrews,* 53 F.3d at 1041. The Commissioner may reject the uncontradicted opinion of a treating or examining physician or psychologist by providing clear and convincing reasons supported by substantial evidence in the record. *See Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir.1995); *Andrews,* 53 F.3d at 1043; *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983).

■ Dr. Morton diagnosed plaintiff with porphyria after examining plaintiff and testing stool and blood samples. The tests were conducted at the Mayo Clinic. Tr. 103. Porphyria is a hereditary condition which relates to a deficiency of enzymes involved in the metabolic pathway of the production of heme, essential to the human body, and resulting in porphyrin accumulation. Tr. 103, 478. The abnormal porphyrins cause mostly neurologic and psychiatric symptoms and is triggered by exposure to porphyrogenic substances. Tr. 103, 478. Dr. Morton opined that plaintiff's porphyria was activated by exposure to material at Intel and Sequent and that plaintiff was rendered disabled due to her condition. Tr. 478–79.

At the hearing before the administrative law judge on February 14, 1995, the medical expert, Dr. Rullman, somewhat reluctantly accepted a diagnosis of multiple chemical sensitivity rendered by plaintiff's treating physician, Dr. Green, but discounted Dr. Morton's diagnosis of porphyria. Tr. 100–101. Dr. Rullman's rejected the diagnosis of porphyria because it is "exceedingly rare" and he did not believe plaintiff's symptoms "particularly suggest

that diagnosis." Tr. 101. Dr. Rullman gave no explanation for this conclusion, nor did the ALJ ask for clarification. Dr. Rullman also suggested that diagnoses of porphyria from Dr. Morton were suspect because he diagnosed porphyria more frequently than other physicians.

The ALJ rejected Dr. Morton's diagnosis of porphyria. Tr. 20. In so doing, the ALJ relied on the testimony of Dr. Rullman and also on the fact that Dr. Morton was not a treating physician and that plaintiff had not received treatment for "chemical sensitivity" in the past two years. The ALJ remarked, however, that "labeling of the disorder is really not material," because he accepted Dr. Green's diagnosis of multiple chemical sensitivity and partially credited plaintiff's testimony "to the extent that she has experienced debilitating symptoms after exposure to certain chemicals and fumes." Tr. 20.

Contrary to the ALJ's finding and the Commissioner's position, it is relevant whether Dr. Morton's diagnosis is accepted. The diagnosis of porphyria supports plaintiff's subjective testimony regarding the severity of her symptoms and plaintiff's claims that her symptoms are chronic in nature rather than occurring only after exposure to certain chemicals.

The ALJ relied on Dr. Rullman's testimony that plaintiff's symptoms did not support a diagnosis of porphyria. However, Dr. Rullman did not provide any specific reason or explanation why plaintiff's symptoms were not consistent with porphyria. Such lack of explanation is problematic in light of the fact that Dr. Morton conducted tests to determine whether plaintiff suffered from porphyria. Essentially, Dr. Rullman discounted Dr. Morton's diagnosis of plaintiff's condition solely because Dr. Rullman believes that Dr. Morton renders diagnoses of porphyria too frequently.

The ALJ also rejected Dr. Morton's diagnosis because he was an examining rather than treating physician. This fact does not serve as a basis to discredit his opinion; Dr. Morton's opinion still carries more weight than the opinion of Dr. Rullman, a non-treating, non-examining physician. The ALJ further discounted Dr. Morton's diagnosis because plaintiff had not sought treatment in two years. However, avoidance of triggering substances and a vegetarian diet were the only treatment methods suggested by Dr. Morton. Tr. 478. Accordingly, I find that the ALJ erred in rejecting Dr. Morton's opinion and conclusion.

### B. Testimony of Plaintiff

■ Plaintiff next claims that the ALJ erred in discrediting her testimony regarding the severity of her symptoms. The ALJ partially discredited plaintiff's testimony regarding her ability to perform work activity during the closed periods.

■ If a claimant produces objective medical evidence of an impairment which could have reasonably caused some degree of the alleged symptom, and no evidence of malingering exists, the ALJ can reject the claimant's testimony regarding the severity of the alleged symptoms only by offering specific, clear and convincing reasons for doing so. *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996); *see also Bunnell v. Sullivan,* 947 F.2d 341, 345–346 (9th Cir.1991); *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir.1986). Factors relevant to credibility of the claimant's testimony include the claimant's daily activities, failure to seek or follow a prescribed course of treatment, inconsistencies in the record, and relevant character evidence. *Bunnell,* 947 F.2d at 346.

Plaintiff testified that she was unable to work during the periods at issue because of increasing severity of her respiratory problems and fatigue. Plaintiff testified that she has tried to perform odd jobs since 1993. For example, plaintiff worked for a company that set up demonstrations at grocery stores. Plaintiff called in for work whenever she felt she was able to work. Tr. 117. Plaintiff also worked as a canvasser for the Oregon League of Conservation Voters for five weeks. Tr. 151.

Plaintiff left most of these jobs because of increased respiratory problems which included coughing and difficulty breathing, fatigue and joint pain. Tr. 116, 153–55. At both the February 14, 1995 hearing and the June 10, 1997 hearing, plaintiff testified that her daily activities consisted mostly of resting during the closed periods when she was unable to work. Tr. 120, 162. Plaintiff did not perform household chores or repairs and only shopped occasionally for groceries when she felt able. Tr. 117, 120, 162–63. As of 1997, plaintiff still was not fully settled into the house she moved to in 1994. Tr. 129, 163.

Plaintiff testified that she began working full-time as a direct care worker for the developmentally disabled in 1995. Tr. 155. Plaintiff worked full-time until July and worked part-time until November 4, 1995. Tr. 157. Plaintiff testified that she began working to support herself because her savings were becoming depleted, she has no family and lives alone. Tr. 155. Plaintiff stated that she quit working in November of 1995 because her respiratory problems and fatigue left her unable to perform her job. Tr. 158–59. At that time, plaintiff testified that she was unable to tend to her own needs. Tr. 158. Plaintiff testified that she was unable to work in 1996 because her breathing problems were too severe and her living environment made it difficult for her condition to improve. Tr. 159. Plaintiff lived in a house with no running water and in need of major repairs. Tr. 161–62. Plaintiff began working again as a care provider in March of 1997.

The ALJ "partially credit[ed] her testimony to the extent that she has experienced debilitating symptoms after exposure to certain chemicals and fumes." Tr. 20. However, the ALJ "concluded that Ms. Nelson's testimony that she has been unable to sustain sedentary or light exertion while managing her symptoms not fully credible." Tr. 21. The ALJ noted that plaintiff was able to work as a care provider during 1995 and 1997.

Plaintiff argues that the ALJ improperly considered plaintiff's work activity during 1995 to determine whether she was disabled. Plaintiff claims that her work during 1995 should be considered a trial work period and not determinative of her disability status. *See* 20 C.F.R. § 1592(a) The Commissioner concedes that the ALJ erred in considering plaintiff's work in 1995 as substantial gainful activity without considering the trial work provisions. However, the Commissioner argues that plaintiff's work activity during 1995 bears on her credibility.

However, the issue before the court is whether plaintiff is entitled to benefits for the closed periods. By plaintiff's own testimony, she was able to work until November 4, 1995, when her condition decreased to the point that she was unable to work or even meet her own needs. Tr. 158. However, the fact that plaintiff was able to work during 1995 does not mean that her disability had ceased or that plaintiff was able to work after November 4, 1995. Plaintiff's testimony regarding the improvement and worsening of her chronic symptoms are supported by the opinions and conclusions of Drs. Green and Morton. No evidence in the records suggests plaintiff is malingering; to the contrary, a psychologist who examined plaintiff found no malingering or exaggeration of symptoms. Tr. 374. Further, information from plaintiff's former landlords supports plaintiff's testimony and complaints during one of the closed periods in question. Tr. 499–500. Therefore, without further evidence that plaintiff's testimony is not credible or that plaintiff was able to work during the periods in question, plaintiff's work activity in 1995 and 1997 is not a clear and convincing reason to reject plaintiff's subjective testimony.

The ALJ further discounted plaintiff's testimony because she drove to work and occasionally drives to shopping. Tr. 21. An ALJ may reject a claimant's testimony if the claimant is able to spend a substantial part of her day performing

**1116**

household chores or other activities which are transferable into a work setting. The Act, however, does not require that claimants be incapacitated to be eligible for benefits, and "many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen v. Chater*, 80 F.3d at 1284 (internal citation omitted). Activities such as occasionally driving to the grocery store are not indicative of plaintiff's ability to work and do not detract from her subjective complaints.

Finally, the ALJ noted that plaintiff "was unable to provide specific credible answers to questions about her ability to work or regarding credibility questions raised by the Appeals Council." Tr. 21. Simply deeming plaintiff's answers not credible does not rise to the level of specificity required. *Smolen*, 80 F.3d at 1281. The Commissioner maintains that the Appeal Council noted inconsistencies reported by plaintiff regarding her daily activities. I disagree. The Appeals Council simply summarized plaintiff's account of her daily activities in 1993, 1994 and 1995 and stated, "If the claimant's subjective complaints were found to be credible, she would not be able to function as found by the Administrative Law Judge." Tr. 549. The Appeals Council therefore remanded the case for further proceedings and instructed the ALJ to "[f]urther evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations...." Tr. 550. I find that the ALJ failed to provide adequate rationale for rejecting plaintiff's subjective testimony.

The question remains whether these errors require reversal or remand for further consideration. "The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987) (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir.1985)). Remand is appropriate where further proceedings

would resolve defects in the administrative proceedings. However, where new proceedings would simply serve to delay the receipt of benefits and would not add to the existing findings, an award of benefits is appropriate. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.1989).

I find further proceedings unnecessary and inappropriate. Plaintiff's testimony that she was unable to work during the closed periods at issue is supported by the opinions and conclusions of her treating physician and an examining physician. Therefore, plaintiff is entitled to benefits for those periods.

CONCLUSION

For the reasons set forth above, the Commissioner's decision that plaintiff can perform her past relevant work is not supported by substantial evidence. Accordingly, the decision of the Commissioner is REVERSED and REMANDED for payment of benefits for the periods of March 1993 through December 31, 1994, and January 1, 1996 through March 8, 1997. IT IS SO ORDERED.