952 F.2d 406
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Maria Luisa ALVA, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 90-16138.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1991.
Decided Jan. 6, 1992.
 
 Before FLETCHER, WIGGINS and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Maria Luisa Alva appeals from the district court's grant of summary judgment in favor of the Secretary of Health and Human Services, and affirming an Administrative Law Judge's (ALJ) finding that Alva was not disabled for purposes of Social Security disability benefits between October 8, 1980 and September 30, 1982. The district court's grant of summary judgment is reviewed de novo. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.1989). We reverse the ALJ's decision "only if it is based on a legal error or if the fact findings are not supported by substantial evidence." Sprague v. Bowen, 812 F.2d 1226, 1229 (9th Cir.1987).
 
 I.
 
 3
 Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The reviewing court must examine the record as a whole and consider adverse as well as supporting evidence; it "may not affirm simply by isolating a specific quantum of supporting evidence." Hammock v. Bowen, 879 F.2d at 501, quoting Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.1985).
 
 
 4
 Maria Alva suffers from many medical ailments, which the ALJ has acknowledged include hypertension, diabetes, chest pain, esophagitis, arthritis and a duodenal ulcer. Whether these conditions rendered Alva disabled prior to September 30, 1982, the last date for which she was eligible for disability insurance, is the critical issue.
 
 
 5
 Alva, who emigrated from Mexico in 1965, is now 58 years old. She received an education through sixth grade in Mexico. Her prior relevant work experience includes three years as a seamstress followed by twelve years as a cannery worker. She claims that she was disabled on October 8, 1980, when she stopped work at the cannery. Her alleged disability does not result from a single symptom, but from generalized weakness and disabling pain, caused by the combination of her various ailments.
 
 
 6
 She made what the ALJ termed "unsuccessful work attempts" in 1981 and 1982. ALJ 2.[1] Some of these ended in hospitalization. Alva was admitted to San Jose Hospital from July 14 to July 22, 1981, where she was treated for uncontrolled diabetes and gastrointestinal problems. X-Rays taken during this hospitalization revealed "extensive deforming esophagitis," Tr. 170, sufficiently severe that she had trouble eating and had lost weight. This condition improved with treatment, though it reappeared after the period of coverage ended. She was hospitalized again from September 14 to September 29, 1981 after she became dizzy and lost consciousness at work. Over the course of the next year, she had many examinations and treatments for these and other health problems. Her treating physician was Dr. Sergio Court.
 
 
 7
 The ALJ concluded that during the period of coverage, Alva's impairments did not prevent her from performing her past relevant work as a seamstress. In reaching this conclusion, the ALJ made several findings not supported by substantial evidence.
 
 
 8
 1. "There is no support in the medical evidence, since there is a lack of any mention in the treatment notes, of frequent dizzy spells or fainting spells." ALJ 5. On the contrary, Dr. Court's notes from Alva's examination on August 28, 1981 noted "occasional dizzy spells in AM." Tr. 167. There is no doubt that she exhibited "syncope", or diabetic vertigo, in September of 1981: she was hospitalized for it. A cardiac treadmill test administered on September 29 by Dr. A. Tay "had to be stopped because she got dizzy and legs became weak." Tr. 165.
 
 
 9
 2. "There is lack of support in the medical evidence and the diagnostic testing in the record and the hospital reports to find credible the claimant's complaints of chest pain, shortness of breath, and cardiac related 'attacks' during October 1980 to September 1982." ALJ 6. Dr. Court concluded that Alva's EKG was "abnormal" during the September 1981 hospitalization. The treadmill test described above produced "unifocal premature ventricular contractions and it became frequent." Tr. 165. Dr. Lester Cordes, who examined Alva on behalf of the Secretary on November 17, 1982, also reported abnormalities in her EKG.[2] Both doctors noted the presence of an old anteroseptal myocardial infarction (often related to angina). In August of 1983, Alva was again hospitalized for ischemic heart disease and underwent cardiac catheterization. In his diagnosis, Dr. Court remarked "that this lady has been symptomatic from exertional chest pains for 3 to 4 years prior to admission," which would place the onset long before the end of the period of coverage. Tr. 191.
 
 
 10
 3. "The treatment notes for the period under consideration show that the arthritic condition was not in existence or causing any functional limitations." ALJ 4. On the contrary, Dr. Court noted that Alva reported "[n]ewly developed shoulder pains & [decreased] ROM [range of motion]" as early as August 28, 1981. Tr. 167. A year later, Dr. Court again noted that Alva had "pain on shoulder" and "Naprosyn not helping." Tr. 152. Dr. Cordes similarly recorded "a longstanding history of arthritis" at his November 1982 examination. Tr. 182.[3]
 
 
 11
 The ALJ made these findings in the face of a record documenting several illnesses. Throughout the period of coverage, Dr. Court changed Alva's diabetes medication in a search for a successful combination. She was also being treated for hypertension. In September 1982, she saw Dr. Hashem Farr, a consulting gastroenterologist, for recurrence of her digestive problems. She also reported viral illness at this time. By December 9, 1982 she was feeling "very weak and tired," so much that she could not perform household chores. Tr. 151. The ALJ was required to consider the combined effect of Alva's impairments, regardless of whether any impairment standing alone would be disabling. 20 C.F.R. § 404.1523; Hammock, 879 F.2d at 503. The ALJ simply did not do so. It was error for him to stop the analysis after considering only "[e]ach of [Alva's] complaints ... individually." ALJ 3.
 
 
 12
 In reaching the ultimate conclusion that Alva was not disabled, both the ALJ and the district court placed great importance on work release slips signed by Dr. Court and Dr. Farr. The work releases were fill-in-the-blank slips that read as follows:
 
 CERTIFICATE TO RETURN TO WORK OR SCHOOL
 
 13
 Mr./Mrs./Miss [name] has been under my care from [date] to [date] and is able to return to work/school on [date]. Remarks: ____________________________________. Signed: ____________________________________.
 
 
 14
 Dr. Court typically left the "Remarks" space blank, although on one occasion he wrote the word "Diabetes." The ALJ and the district court both construed these work release slips as tantamount to findings of no disability by the doctors. In light of the record as a whole, this was not an appropriate interpretation. In a letter dated November 30, 1988, Dr. Court explained that the slips were issued in response to Alva's desire to attempt work because her family needed the money. "In spite of the work certificates that I provided to her in 1981, and 1982, the fact is that she was unable to perform and I have extensive records to document the fact that in spite of her wishes and intention to go back to her work she actually became too weak and symptomatic to actually perform any gainful work." Tr. 320. Alva testified to the same understanding of the work release slips. At an administrative hearing on October 5, 1988, she testified that "I wanted to try and ask him to give me the paper because I wanted to go back to work.... He told me, you're not ready to work but ... if you want to go to work, go and see if you can." Tr. 297. The fact that Alva required hospitalization within a week of Dr. Court's September 21, 1981 work release slip suggests that the slips represented permission to attempt work rather than certification of fitness. At most they represented the doctor's view that she would not suffer serious set-backs from the attempts (though even this may be too generous an interpretation in light of her nearly immediate re-hospitalizations). The fill-in-the-blank nature of the forms also makes them less reliable as medical evaluations. Murray v. Heckler, 722 F.2d 499, 401 (9th Cir.1983).
 
 
 15
 Both the ALJ and the district court perceived a tension between the work release slips and Dr. Court's 1988 letter, such that they could only believe one or the other. By understanding that the work release slips were permissions and not medical evaluations, the tension disappears. This circuit has noted that "a willingness to try to engage in rehabilitative activity--and a release by one's Doctor to engage in such an attempt--is clearly not probative of a present ability to engage in such activity." Cox v. Califano, 587 F.2d 988 (9th Cir.1978). This approach is consistent with 42 U.S.C. § 422(c)(2), which states that a period of "trial work" shall not be considered in determining whether a disability has ceased during that period. Alva should not be punished for her attempt to return to gainful employment rather than to have made earlier application for disability benefits.
 
 II
 
 16
 Alva filed her application for benefits on September 29, 1982, which led to her first hearing before the ALJ on August 16, 1983. He decided that she was not disabled. Alva pursued the case to district court, but before it proceeded to judgment, the parties stipulated that the matter be remanded for further administrative proceedings.
 
 
 17
 The second hearing before the ALJ on June 20, 1985 also resulted in a decision unfavorable to Alva. This decision was affirmed by the district court, but this court reversed and remanded. Alva v. Bowen, No. 87-2300 (9th Cir. May 27, 1988) (text in WESTLAW). The court held that the ALJ had failed to make findings explaining why he discredited Alva's "excess pain" testimony as required by Cotton v. Bowen, 799 F.2d 1403 (9th Cir.1986), Gamer v. Secretary of Health and Human Services, 815 F.2d 1275 (9th Cir.1987) and Varney v. Secretary of Health and Human Services, 846 F.2d 581 (9th Cir.1988). On October 5, 1988, a third hearing was held before the same ALJ. His decision finding no disability, issued on January 31, 1989 and affirmed by the district court on summary judgment, is the subject of this appeal.
 
 
 18
 In the interim, some confusion arose in the circuit over the applicability of Cotton and its descendants. This confusion was resolved by our recent decision in Bunnell v. Sullivan, No. 88-4179, slip op. 13699 (9th Cir. October 1, 1991) (en banc), which reaffirmed the Cotton standard. As explained in Bunnell:
 
 
 19
 When [evidence of an underlying impairment] is produced, the Cotton standard does not require medical findings that support the severity of pain and, thus, the adjudicator may not discredit the claimant's allegations of the severity of pain solely on the ground that the allegations are unsupported by objective medical evidence.
 
 
 20
 Bunnell, slip op. at 13705 (original emphasis). Instead, if the claimant shows an underlying medical condition that may reasonably be expected to cause pain, the Secretary must consider the claimant's subjective reports regarding the severity of the pain, and reject them only through specific findings explaining why they are not credible. Bunnell held that steps spelled out in Social Security Regulation 88-13 for determining the credibility of a claimant's claims of excess pain are mandatory. See Bunnell, slip op. at 13711. At oral argument, counsel for the Secretary acknowledged that SSR 88-13 applied to the ALJ's latest decision.
 
 
 21
 The ALJ acknowledged in his decision that Alva's case was remanded for reconsideration in light of Cotton. ALJ 2. Unfortunately, he did not heed the mandate. Under Cotton (and now Bunnell), the adjudicator should begin by determining whether the claimant has a medically verifiable ailment that could cause some pain. That is clearly the case here. Dr. Court summarized Alva's many underlying problems:
 
 
 22
 [I]t is very well documented in my records and at San Jose Hospital medical records that during [the period of coverage] this lady had unstable angina, had brittle diabetes with multiple hypoglycemic attacks and symptoms caused by diabetic neuropathy, mainly leg weakness, pain and tingling and orthostatic hypotension. In spite of being hypertensive and receiving hypertensive medications the diabetes caused unpredictable and drastic drops in her blood pressures causing dizzy spells associated with symptomatic hypoglycemia, weakness from diabetic neuropathy along with her chest pains.
 
 
 23
 Tr. 320. She also suffered from arthritis that caused her pain.
 
 
 24
 The ALJ next should consider the factors outlined in Cotton-Bunnell to determine whether the subjective pain testimony was credible. Instead, the ALJ in this case simply stated,
 
 
 25
 "In sum, there is no support in the objective medical evidence, and even from the notes of the treating physician ... that would show that the claimant was precluded from performing her past relevant work activity because of any of the above mentioned impairments." ALJ 5.
 
 
 26
 "The lack of such findings in the medical evidence is sufficient to show that there is no specific support for the claimant's complaint of 'excess pain' during the period under consideration." ALJ 6.
 
 
 27
 This language reveals that the ALJ rejected Alva's pain testimony on precisely the grounds forbidden by Bunnell "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell, slip op. at 13710. The ALJ must provide specific reasons supportable in the record for his disbelief, after examination of the factors spelled out in SSR 88-13 (quoted in Bunnell, slip op. at 13712). Our review of these factors in light of the record reveals nothing to discredit Alva's pain testimony.
 
 
 28
 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain. Alva reported pains in locations consistent with her underlying medical conditions. Her heart problems generated chest pains and shortness of breath. Her arthritis was localized in her shoulders. Weakness in her legs is consistent with uncontrolled diabetes. Dizziness was also consistent with her medical problems.
 
 
 29
 2. Precipitating and aggravating factors (e.g. movement, activity, environmental conditions). Dr. Cordes noted that Alva's arthritic pains were aggravated by exercise, as one might expect. In December of 1982[4], Dr. Court noted "Exertion-induced palpitation and generalized weakness. Feels very weak and tired and improves with rest. Any exertion will induce this problem." Tr. 151. These symptoms are also consistent with angina.
 
 
 30
 3. Type, dosage, effectivenss, and adverse side-effects of any pain medication. Alva was prescribed many drugs for her various ailments. Her analgesic prescriptions included Naprosyn and Tylenol # 3 with codeine, for arthritis pain, and Darvon while hospitalized in July 1981 for diabetes pain, until she had an adverse reaction.
 
 
 31
 4. Treatment, other than medication, for relief of pain. Very shortly after the end of the covered period, Dr. Court recommended that Alva avoid strenuous activity.
 
 
 32
 5. Functional restrictions. See below.
 
 
 33
 6. The claimant's daily activities. While discussing Alva's "exertion-induced palpitations" on December 20, 1982, Dr. Court added that Alva "can't do house chores." Tr. 151. Dr. Cordes's observation from a month earlier was that Alva "is able to do routine housework without too much difficulty," Tr. 185, a statement which implies that chores caused at least some difficulty at an earlier date.
 
 
 34
 Consideration of the SSR 88-13 factors in light of the record does not support the ALJ's discrediting of Alva's testimony of disabling pain, but, instead, lends credence to her testimony. Bunnell permits "the adjudicator [to] discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence" so long as there are "specific findings that are supported by the record" to back up such a conclusion. Bunnell, slip op. at 13712. The ALJ points to nothing in the record nor do we find anything that could cause a trier of fact to question her credibility. In short, the ALJ established no factual basis for rejecting Alva's testimony of disabling pain.
 
 CONCLUSION
 
 35
 The ALJ failed to consider the appropriate factors and the findings he did make are not supported by substantial evidence in the record as a whole. The decision to remand for additional proceedings or simply to award benefits lies in the discretion of this court. McAllister v. Bowen, 888 F.2d 599, 603 (9th Cir.1989); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1987); Stone v. Heckler, 761 F.2d 530, 533 (9th Cir.1985). If further proceedings would remedy the defects in the original administrative decision, a remand is appropriate; if, however, the record is well developed and a rehearing would simply delay receipt of benefits, reversal is appropriate. McAllister, 888 F.2d at 603; Miller v. Bowen, 789 F.2d 678, 682 (9th Cir.1986); Lewin v. Schwieker, 654 F.2d 631, 635 (9th Cir.1981). We are satisfied that the record is thoroughly developed after three hearings before the ALJ, and that no purpose would be served by ordering a fourth. Hammock, 879 F.2d at 501 (extending our discretion to award benefits to cases where the claimant is of advanced age and there has already been severe delay). Substantial evidence in the record as a whole supports a finding of disability. We therefore reverse the judgment of the district court and remand with instructions to remand to the Secretary with a direction to award benefits.
 
 
 36
 REVERSED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 ALJ's decision of January 31, 1989
 
 
 [2]
 At this same examination, Dr. Cordes made the following "REVIEW OF SYSTEMS: Positive for headaches, trouble swallowing, shortness of breath, skin trouble, chest pain, heart trouble, high blood pressure, ulcers, stomach pains, decreased appetite, urinary infection and burning, bad circulation, varicose veins, dizziness, nervousness, depression, weight loss, joint pains, back pain." Tr. 183 (emphasis added)
 
 
 [3]
 Dr. Court and Dr. Cordes differed in their assessment of how severe the arthritis was: Dr. Cordes called it "mildly debilitating," Tr. 185, while Dr. Court cited to "extensive limitations" on her shoulder movements "due to extensive degenerative disease." Tr. 195. Given the additional weight we should accord a patient's regular treating physician, Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989), Dr. Court's analysis is the more persuasive. This is particularly so because "the findings of the non-treating physician [Cordes] were the same as those of the treating physician [Court]. It was his conclusions that differed." Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983)
 
 
 [4]
 We are permitted to examine medical findings from times shortly after the period of coverage that shed light on conditions during the covered period. Kemp v. Weinberger, 522 F.2d 967, 969 (9th Cir.1975)